[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDA OF DECISIONS
1.Re Motion to Open and Modify Judgment(#372)
These matters comes before the court on a post-judgment motion to open and modify judgment filed by the defendant on November 13, 1997. The parties were divorced in 1994 after a trial. At that time, the trial court ordered that the parties share joint legal custody of the minor children of the parties, Ryan and Thomas. Their residence was ordered to be with the defendant with certain visitation orders in effect. From time to time thereafter there were modifications to those visitation orders, none of a major magnitude. After a lengthy hearing, including expert testimony on a motion to modify filed by the plaintiff regarding issues of custody and visitation, the trial court, on August 7, 1997 issued a written memorandum of decision in which the judgment was opened and the custody and visitation orders were modified. The decision ordered that the plaintiff would have sole legal and physical custody of the minor child Ryan, with certain court-ordered visitation for the defendant. It further ordered that the defendant would have sole legal and physical custody of the minor child Thomas, with certain orders regarding visitation for the plaintiff
In her motion dated November 12, 1997, now before this court, the defendant seeks a modification of the judgment with an order of sole legal and physical custody of Ryan ordered to her with reasonable rights of visitation to the plaintiff. This motion was filed, then, just three months after the modification of custody ordered on August 7, 1997.
Procedural background
In that interim three month period, among other things, the following procedural history occurred in the matter of Bowles v.Bowles. First, notably, no appeal was taken from the decision of August 7, 1997. The defendant. who had been represented by counsel at the time of the custody hearing resulting in the August, 1997 decision proceeded thereafter pro se. Her filings with the court from August 7, 1997 until the November motion now before the court included seven motions for contempt, each and every one regarding the orders affecting the minor child Ryan. No contempt finding has ever issued on these motions against the CT Page 5399 plaintiff. The defendant has seen fit to file seventeen other motions in the window from August, 1997 to the present time. These many motions tax the judicial resources of a busy family court. While the defendant has filed these many motions and pursued most in court requiring the plaintiff's appearance. as well as Ryan's counsel's appearance, the court has not been able to provide hearing time for many of them. The court on numerous occasions attempted to alternatively provide hearing time for the many motions filed by the defendant or to talk things through, on the record. with the parties in hopes of ultimately reducing the discord in this high conflict family. Despite all such efforts, the conflict has persisted.
In her motion to open and modify the defendant alleges that a change of circumstances has arisen since August, 1997 and that the judgment should be opened, that it is in Ryan's best interest to return custody to her, his mother. "Such a change of circumstances is usually a prerequisite for an order modifying custody [citations omitted]; but cf. Simons v. Simons . . . (determination of a change of custody permissible even if no change of circumstances found where it was shown that at the time of dissolution the court had not focused its attention primarily on the best interests of the child.)" Trunik v. Trunik,179 Conn. 287, , 289, 426 A.2d 274 (1979). The latter is not claimed by the defendant; indeed, it would be an unsustainable position, since the entire hearing resulting in the August 7, 1997 rulings was devoted to a consideration of Ryan's (and Thomas') best interests.
In claiming that a change of circumstances has occurred, the plaintiff's motion states, "The minor child has consistently stated from before the trial to the present that he wants to live with his mother and brother."
In her August 15, 1997 Motion for Contempt and Harassment (#338), the defendant stated that "Ryan said, `I do not want to live with him and I do not want to talk to him [reference to plaintiff].'"
On August 20, 1997, the defendant filed a Motion for Contempt (#343) in which she wrote, "Plaintiff's continued patterns of behaviors also are a continuation of not being able to communicate to defendant directly and his need for control. Ms. White [Family Relations evaluator] claims that this behavior had subsided. These continued actions by plaintiff show otherwise. CT Page 5400 Defendant asks the court to return the minor child to defendant's custody due to plaintiff's lack of insight and `his behavior and its negative effect on Ryan.'"
On August 26, 1997 the defendant filed a Motion for Contempt (#344) in which she wrote. "Defendant also asks the court toreturn the minor child Ryan Bowles to defendant's custody and care so these continual motions for plaintiff's behavior of notacting in the best interests of the minor child Ryan Bowles canbe stopped." (Emphasis added.).
On September 15, 1997 the defendant filed a Motion for Contempt (#354) in which she wrote, "The minor child Ryan Bowles did not want to go to soccer practice. Minor child wanted to spend the visitation time with the defendant." She further wrote, "Plaintiff's behavior has not largely subsided' as Flora White stated during the sole custody trial. Furthermore, that plaintiff does not have insight into his behavior and its negative effect on Ryan for which Flora White claims the opposite to be true. Plaintiff is an unfit parent as shown by his continuing behaviors. As a result, defendant also requests minor child Ryan Bowles be returned to her proper care and custody."
In her Motion for Contempt dated October 21, 1997 (#367), she stated, "During the conversation with the minor child, the defendant told the child that she had tried to reach hem the previous night and gave him the times she had called." It further stated, in regard to another telephone conversation, "The minor child told the defendant that dinner was on the table. The minor child confirmed to the defendant that he was forced to eat food he did not like and to sit at the table until he finished his meal."
In her Motion for Contempt dated October 13, 1997 (#361), the defendant stated, "On September 12, 1997 minor child told defendant the plaintiff never calls him from outside when defendant calls and he is usually right outside near the door to the house." It also, inter alia, states, "On August 30, 1997, defendant called for minor child . . . [m]inor child told defendant he never got the message."
In the Motions for Contempt dated September 23, 1997 (#355), October 13, 1997 (#361), October 17, 1997 (#364), October 21, 1997 (#367), the defendant has stated, "the Plaintiff is an unfit parent." CT Page 5401
The defendant filed a Motion for Contempt dated December 19, 1997 (#385), in which she wrote: ". . . the defendant requests to order the plaintiff to return the minor child to the defendant where he wants to live and belongs."
Many of the additional motions filed by the defendant in this three month period since the August, 1997 custody change have been addressed to the custody and visitation orders regarding Ryan. On August 15, 1997, the defendant filed Motion for Modification of visitation Pickup (#337) seeking an order to modify the August, 1997 order regarding transportation for her visitation; the motion claimed that when she lost her child support for Ryan it would ". . . leave defendant with even less money to survive."
On September 25, 1997, the defendant filed Motion for Modification of Defendant's Visitation (#347). In the motion the defendant ". . . respectfully moves this court to grant her extra visitation rights with the minor child Ryan Bowles so that defendant can share her time with the maternal grandparents. The visitation time requested are the two weekends that the defendant does not have the minor child."
On September 25, 1997, the defendant filed Motion for Order Telephone Orders for Minor Child Ryan Bowles (#348). In the motion defendant states, "[m]inor child Ryan Bowles' physical residence changed even though minor child wanted to stay with his mother and brother. Ryan is continually expressing to defendant that he is not happy living with plaintiff. Every week since the change of custody minor child has told defendant that he cries for her at night." She further states in the motion that "[p]laintiff . . . is an unfit parent." She moves ". . . the minor child Ryan Bowles be returned to defendant's custody where he belongs."
On October 14, 1997, the defendant filed Motion for Order Restrictions And Maintenance on Care for Minor Child (#362) with six pages of statements that continuously impart what the minor child allegedly "spontaneously told defendant" on occasion after occasion. The defendant states the "[p]laintiff is an unfit parent" and "the defendant further requests that the minor child Ryan be returned to defendant, where he wishes to live and where he rightfully belongs." CT Page 5402
The defendant's father, Pacific Giordano has also attempted to participate in these proceedings by three separate motions filed in September and October, 1997. He is not a party to the proceedings and is seeking to intervene. A separate hearing has been held on these motions on March 3, 1998. The motions seek visitation with Ryan, essentially on the only weekend time that Ryan would be at his home with his father. These motions, dated September 15, 1997 (#366) and October 3, 1997 (#359) mirror the defendant's above referenced motion to modify visitation (#347) dated September 25, 1997. Their disposition is the subject of the second part of this memoranda of decisions.
Findings of the court
On August 7, 1987, this court transferred Ryan's custody from his mother to his father. The following events occurred subsequent to that date. Mr. Bowles, with his family, moved to Higganum (a part of Fraddam), so that the children could attend the Haddam public schools. The move was anticipated, but it ultimately occurred in November rather than the beginning of the school year. At the summer custody hearing, Mr. Bowles explained that the Haddam move was contemplated in time for the school year. Mr. Bowles is remarried to Debbie Proulx Bowles. She has children of a prior marriage who had continually attended the Haddam public schools by virtue of the residence of their father, who shares joint custody of these children. His moving out of the school district had been the impetus for the Bowles family move to Higganum. By arrangements made with the school administration, however, Ryan attended Haddam public schools from the beginning of the school year. Therefore, no disruption in education occurred to Ryan by the late move, of course, by virtue of the August 7, 1997 court order it was already contemplated that Ryan would be going from the Hamden public schools to the Haddam public schools.
Ryan's adjustment to his life with his father and step- mother, and her children. has never been permitted to occur. Ms. Bowles has from the moment of the move, attempted to continually interject herself into the parent-child relationship of Mr. Bowles with his son. She has criticized the way he has clothed Ryan, the food he has fed Ryan, the way he has comforted Ryan, the discipline style he has utilized with Ryan, the time he has committed to Ryan, the bedroom arrangements he has made for Ryan, the medical care that he has provided for Ryan, and much, much more. In no respect can this court find from any of the many CT Page 5403 assertions made by Ms. Bowles at hearing, that Mr. Bowles' care of Ryan has been inadequate. Ms. Bowles has failed to prove, in any respect, that Ryan's best interests have not been served by his father as his custodial parent.
Instead, Ms. Bowles, having engaged herself in this relentless campaign to regain custody of Ryan, has repeatedly subjected Ryan to the distress that is inherent in her campaign: she has not allowed Ryan to just be, by constantly invoking his loyalties to her and his brother, allowing Ryan no peace in his environment. She has repeatedly bullied the child by the manipulation of his love for her. She makes Ryan pick between soccer and visitation with her; she makes Ryan pick between basketball and dinner with her at his favorite restaurant. As a result of these impossible ultimatums, Ryan is deprived of the opportunity to participate in events in his new community that are essential to the process of his making friends, feeling comfortable and settling into his new environment. Instead, she enrolls him in activities near her home that she supports. Over the specific objection of Mr. Bowles she has, on her visitation, enrolled Ryan in religious education near her home. Mr. Bowles made clear his objection, that he wanted Ryan involved in religious education at his new home parish, in Haddam. Ms. Bowles ignored Mr. Bowles, the custodial parent's stated position, and instead subjected Ryan to further conflict.
By the very nature of her voluminous motions, and her testimony, it is crystal clear that on each and every visit Ms. Bowles extracts from Ryan every small detail of his life with his Dad that she can find useful in this battle campaign. During the hearing on this matter, Ms. Bowles relentlessly pursued examination of Mr. Bowles and his wife as to the foods fed Ryan. First, she subjected each to a `test' as to what Ryan's favorite foods were and then pursued further interrogation as to whether he was fed these foods. When Ms. Proulx Bowles remarked that Ryan's favorite food is hot dogs. Ms. Bowles, in questioning her remarked that was easy, every one knew that, and then inquired as to any other favorite foods. This was not the end. Then. the inquiry was how long Mr. Bowles required Ryan to stay at the table if he had not finished eating his dinner. Ms. Proulx Bowles denied that Mr. Bowles requires Ryan to sit there for more than ten or fifteen minutes.
Ryan's attire was raised as an issue by Ms. Bowles. It was significant to her that Ryan might wear hand-me-down clothes from CT Page 5404 the Proulx children. She cross-examined Mr. Bowles as to whether Ryan was sent to school without snow boots on a day in late Fall, when it snowed. The day did not stand out in his mind; he had no memory of it. On cross-examination of Ms. Proulx Bowles as to another snowy day, Ms. Bowles pursued again and again the question of why Ryan had to wait outside for the bus rather than be driven to school. Notably, the snow was not severe enough to cancel school; the buses were running.
When Ryan came to live with his father he went through a period where he cried at night missing his mother. The testimony disclosed that Mr. Bowles went to him and comforted him on these occurrences. Ms. Bowles inquired as to whether Ryan had asked to telephone her in the middle of the night. He had. Through her own testimony, and as evidenced by her cross-examination, she knew this from the child. Mr. Bowles was clear that he told Ryan that he could telephone in the morning but not in the middle of the night. This was another ground upon which Ms. Bowles criticized his parenting.
During the summer hearing, the testimony disclosed that Ryan Bowles wet his bed periodically in the middle of the night. At this hearing, Mr. Bowles indicated that while the bed wetting has continued, it has subsided somewhat. At this hearing, Ms. Bowles criticized Mr. Bowles for not pursuing this matter other than a past consultation with the pediatrician, when that was exactly the approach she had shared just a few short months earlier at the summer custody hearing.
Ms. Bowles criticized Mr. Bowles in regard to medical care provided to Ryan in numerous ways. She asserted that he was not providing proper care when he:
1. Administered over-the-counter medications to Ryan when he was home sick;
2. Rescheduled a well-care physical visit when Ryan was sick on the date of the proposed appointment; and
3. Did not consult her in the selection of, and consultation with, the pediatrician in his geographic area.
None of these parental decisions by Mr. Bowles were inappropriate for Ryan. Ms. Bowles made an appointment for herself with Ryan's new pediatrician. She did this without Mr. CT Page 5405 Bowles' knowledge. This was inappropriate. Connecticut GeneralStatutes section 46b-56 (e) provides: "A parent not granted custody of a minor child shall not be denied the right of access
to the academic, medical, hospital or other health records of such minor child unless otherwise ordered by the court for good cause shown.(Emphasis added)." Ms. Bowles has not restricted herself to this right. Instead she sought a consultation with this physician. It can be inferred that there is no reason for the same other than to inject herself in the custodial decision- making process. By these many criticisms, it would appear that Ms. Bowles does not understand what the order of sole custody means. However, she has sole custody of Thomas. It cannot be said that she has included Mr. Bowles in the kind of day-to-day decision-making in regard to Thomas that she asserts is her right regarding Ryan. The court finds that Ms. Bowles understands that Mr. Bowles has sole custody of Ryan. She does not accept the court's decision regarding this. Instead, at every event, she has sought to frustrate the order of the court and has insisted on attempting to inject herself as a custodial parent. This conduct has caused much of the conflict testified to by Ms. Bowles at the hearing on this matter.
Ms. Bowles presented the minor child Thomas as a witness on her behalf. At the time of the hearing, he was 16, almost 17 years of age. He presented as a kind, well spoken young man who articulated the love he feels for his brother Ryan and his desire to have Ryan to live with him. His father did not cross-examine him. Instead he told him that he was proud of his courage to come in and talk to the judge, and, that he loved him, of course, these statements were not under oath, but instead, spontaneous by him in lieu of cross-examination as a pro se representing himself.
Mr. Pacific Giordano also testified on behalf of his daughter. He actively promotes and supports her pursuit of custody of Ryan. His testimony made clear that he and his wife continue to have time with Ryan when Ryan is on visitation with his mother. Mr. Giordano does not attempt to call Ryan at his home with his father. The major change of his contact with Ryan since the August modification of custody is that Ryan has not slept over his home. A witness, Peter Lerner, called by Mr. Bowles related that Mr. Giordano told him on October 14, 1997 that this case would never be over and that he and Debby (Ms. Bowles) would do everything they could to make Bill's (Mr. Bowles') life miserable. This evidence came in without objection CT Page 5406 or subsequent rebuttal. The court finds Mr. Giordano made these statements.
Much of the hearing testimony centered around a dispute when Ms. Bowles sent her father, Pacific Giordano to pick Ryan up from the Haddam school for her visitation. He was not on the list of individuals permitted for pick-up as provided by Mr. Bowles, the custodian, to the school. On that day, December 10, 1997. when Ms. Bowles called the school principal, Ms. Harriman, she was quite upset about the situation. She also called Ms. Proulx Bowles about the pick-up. Ultimately, Ryan went home and his mother came to the house to pick him up for visitation. She sought and received accompaniment by the police. She asserted that she brought the state police because she was "afraid my son wouldn't be released to me, I needed to have it witnessed." There was no evidence before this court that she would have been denied her visitation. The presence of the police must have been troubling for Ryan. This incident has no reflection on propriety of the current custody order but is really a visitation problem reflecting the absolute lack of trust between these two parties and the inability of Ms. Bowles to reflect on the impact of her actions on Ryan.
There was testimony also about a dog that Ms. Bowles gifted Ryan. She had told the child not to tell his father that she was getting him a dog at her house. It is inappropriate for a parent to place a child in such a position. As Anthony Wallace, the guardian ad litem, testified when called as a witness by Ms. Bowles, it improperly teaches the child to be untruthful.
The court finds no factual basis for the Motion to Modify presently before the court. There has been no substantial change in circumstances of Ryan's life since the last court order, other than the conflict caused by the defendant. The court finds that it would not be in the best interest of Ryan to disturb the present order of sole custody to the plaintiff. ConnecticutGeneral Statutes section 46b-56 (a) (b); Pascal v. Pascal,2 Conn. App. 472, 477-478, 481 A.2d 68 (1984), cert. denied,197 Conn. 809, 499 A.2d 60 (1985). . The court is concerned that the manner in which the defendant exercises her visitation is potentially harmful to the minor child, Ryan. He must be permitted to adjust to his home with his father free of the constant inquiry of the defendant. The conflict of the defendant's midweek visitation with the extracurricular sports activities of Ryan must find resolution. If these situations CT Page 5407 continue to simmer and boil over, Ryan will be deprived of the opportunity to enjoy the company of each of his parents free of stress and conflict.
This is inexcusable.
The defendant's Motion to Open and Modify Judgment is denied.
2. Motions for Sanctions (plaintiff's: # 374 and #390 andunnumbered motion for sanctions dated December 30. 1997;defendant's: #376!: Motion for Contempt defendant's # 367)
These motions were argued by the parties at the same time as the Motion to Open and Modify Judgment. The parties all agreed that there was no necessity to present additional evidence beyond that presented regarding the Motion to Open and Modify Judgment. In furtherance of a ruling on these motions, the court makes the following additional findings from that evidence presented.
The defendant's Motion for Contempt (#367) addresses frustrations she has experienced in the exercise of her telephone contact with the minor child, Ryan. The court order allows the defendant to exercise reasonable telephone contact with Ryan, between 6 and 8 p. m. The evidence elicited at hearing results in the following findings: on most occasions Ms. Bowles can reach Ryan by telephone; occasionally, he is not available to her daily because of his and his family's schedule; the phone calls are occasionally interrupted by `total phone' interruptions; Ryan some times speaks to his mother in privacy and some times in the public of his house. The court finds that there has been no violation of the court order regarding telephone contact. The Motion for Contempt is denied.
The parties have each filed Motions for Sanctions. The defendant's Motion for Sanctions (#376) complains that the plaintiff is filing Motions for Sanctions to try to intimidate the defendant and prevent her from pursuing her interests in court. It also asserts that, as a member of the Bar of the State of Connecticut, he attempts to exercise privilege in the assignment of hearing of motions that he files in this case. The balance of the assertions in the motion are really defenses to the claims of the plaintiff in his Motions for Sanctions and therefore will be addressed in that context. As a matter of record, the plaintiff was suspended from the practice of law through most of these proceedings, only re-instated toward the CT Page 5408 conclusion of the hearing. No evidence was adduced that the plaintiff has received favor, or sought favor, in the scheduling of his pleadings for hearings. The plaintiff's motivation for filing his Motions for Sanctions can best be gleaned by a review of his claims coincident with this motion.
Motion for Sanctions (#374) addresses the Motion to open and Modify Judgment. It seeks sanctions, claiming that the motion addressed issues already litigated and was filed without legal justification. Motion for Sanctions (#390) addresses the filing of in excess of 30 motions by the defendant since the August 7, 1997 orders. It claims that many are vexatious and meant to harass the plaintiff. It further claims that it has resulted in fees due to Attorney Wallace, as attorney for the minor child. It seeks an order of the court that the defendant be required to pay-all of Attorney Wallace's new bill since August 7, 1997 and that the defendant be required to obtain permission from the court prior to filing any further motions in the matter.
Motions for Sanctions, dated December 30, 1997 and filed January 5, 1998 (as yet unnumbered as a court filing) addresses the plaintiff's claim that the defendant has interfered with the order of sole custody in the plaintiff. Specific reference, is made to the medical issue. The plaintiff seeks a court order restricting the defendant's access to Ryan's records.
The court has already noted the deluge of motions filed by Ms. Bowles. A remedy must be fashioned so that the court can continue with the orderly flow of its business and address the caseload of the many litigants (approximately 2,000 per year) in family court in New Haven. At the same time, the court must make effort to insure that the right of access to the courts by the defendant is not interrupted, when her claims are bona fide and in good faith. At the same time Ryan must be allowed to live his time — fleeting childhood free of unnecessary court conflict swirling around him. The court notes that Ryan's attorney and guardian ad litem supports the plaintiff's request to limit the defendant's ability to continue these court proceedings. In fact, as he indicated he would at argument, he has, on behalf of Ryan, filed an application for permanent injunction seeking an order of the court that the defendant make no further filings without authority issued by the trial court. He invokes Martin-Trigona,795 F.2d 9 (1985) as precedent and example of the supervisory powers of the court in this regard. Interestingly, the defendant filed a similar motion herself seeking such an order to be CT Page 5409 imposed on the plaintiff.
The court finds that the defendant frivolously files motions with the court on a continuous basis She is dissatisfied with the court orders and abuses the process to attempt to change the orders by persistence and insistence. It has been the rare occasion on the many hearings since August 7, 1997 that the defendant has maintained a bona fide position on an issue before the court. However rare it has been, however, there have been times that the defendant has assumed a defensible position under the law. The right to continue to pursue her position when appropriately waived shall be protected. While every indulgence toward meaningful participation shall be afforded pro se litigants, the defendant cannot be allowed to abuse process.
The court denies the defendants motion for sanctions (#376).
The court grants the plaintiffs motion for sanctions #374 and #390 and motion dated December 30, 1997 and filed January 5, 1998. The court orders that:
1. The defendant shall, through the Clerk's Office submit all pleadings for review by the Presiding Family Judge or its designated judge in its absence. Each Motion filed by the defendant shall state the allegations and legal grounds relied on in furtherance of the motion. Each motion shall be accompanied by a motion for leave to file the such motion which shall be ruled upon by the Presiding Judge, or its judge designee, summarily, without hearing. All motions filed by the defendant since the date of the hearing on these motions shall not be calendered on the court docket. If the defendant desires to pursue the substance of any of them, a new motion shall be filed with motion for leave of court in accordance with this court order.
2. The defendant is ordered to pay all of the fees of Attorney Wallace incurred in connection with Motion #372. These fees are in the nature of child support and therefore it is the intent of this court that they be a debt not dischargeable in bankruptcy. Further, any witness fees incurred by reason of the defendant's subpoena of the minor child's therapist to court shall be paid solely be her.
3. The defendant's right of access to records of Ryan pursuant to Connecticut General Statutes section 46b-56 (e) shall be to existing written records only. For good cause shown, it CT Page 5410 does not include consultative information that would be gained from individual conversations or written communications with the record keepers initiated by the defendant.
3. Re Pacific Giordano's Motions to Intervene (#363 and #359)
Connecticut General Statutes section 46b-57 provides the statutory authorization for a third party to intervene in a controversy before the superior court regarding custody and visitation of minor children. The threshold requirement prior to considering the merits of a motion to intervene is that there be a controversy regarding custody before the Superior Court. At the time of the hearing on these motions, the decision on Motion to Open and Modify (#372) was pending before this court, the hearing having already been held. Therefore, a controversy was in existence on March 3, 1998 the time these motions were argued. None of the parties nor Mr. Pacific Giordano, the individual seeking to intervene presented any evidence.
It is discretionary with the court as to whether to allow third parties to intervene. In ruling on Mr. Giordano's desire to intervene, ". . . the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference." (Connecticut General Statutes section 46b-57). The minor child, Ryan's attorney and guardian ad litem represented that Ryan is very fond of his maternal grandparents and enjoys spending time with them. This is well-supported in the evidence from the August, 1997 custody hearing as well as the hearing on Motion #132.
The court finds that Ryan's best interests would not be served by further fragmenting his time by court order allocating his time. There is absolutely no evidence before this court that Ryan has been deprived of contact with his maternal grandparents.
The court further finds that Pacific Giordano's intervention in these proceedings, as a party, would not be in Ryan's best interests. Mr. Giordano, per the findings regarding Motion #372, has been an active supporter in Ms. Bowles' relentless barrage of this court with motions. To provide him party status would serve to allow the floodgates to open to him as well for court filings. Ryan's well-being requires an end to the conflict over him in court. CT Page 5411
Motions to Intervene (#363 and #359) are denied
Munro, J.